UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
Nolen Bell,                                    :     CASE NO. 1:05-CV-2415
                                               :
          Petitioner,                  :
                                               :
   vs.                                      :     OPINION AND ORDER
                                               :     [Resolving Docs. 6, 14]
Carl S. Anderson,                              :
                                               :
          Respondent.                  :
                                               :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      On December 13, 2005, Respondent Carl S. Anderson moved this Court to dismiss Petitioner Nolen Bell's Habeas Petition. [Doc. 6]. Petitioner Bell opposes Respondent's motion. On July 13, 2006, Magistrate Judge Limbert issued a report and recommendation, recommending that this Court deny Respondent's motion. [Doc. 14]. Respondent timely objected to the Magistrate's report and recommendation on July 27, 2005. [Doc. 15]. For the reasons described below, the Court **DECLINES TO ADOPT** Magistrate Judge Limbert's report and recommendation and **GRANTS** the Respondent's Motion to Dismiss Habeas Petition.

## I. Background

      On December 7, 1982, Ohio indicted Petitioner Nolen Bell, charging him with one count of aggravated murder in violation of Ohio Revised Code § 2903.01. [Doc. 6-1]. Petitioner pled not guilty. *Id*. At trial, a jury found Petitioner guilty of aggravated murder and the trial judge sentenced Petitioner to a term of life imprisonment. *Id*. Petitioner has been incarcerated since

-1-

Case No. 1:05-CV-2415
Gwin, J.

1982. [Doc. 7-1].

Petitioner appealed his conviction to the Eighth District Court of Appeals for Cuyahoga County, Ohio. [Doc. 6-1]. He raised two assignments of error: (1) defendant was denied the right to a speedy trial in violation of Revised Code § 2945.71 and trial court erred in denying defendant's motion to dismiss pursuant to Revised Code § 2945.73; and (2) defendant was denied effective assistance of counsel in violation of the Sixth Amendment. *Id.* On December 1, 1983, the Court of Appeals affirmed the trial court judgment. *Id.*

Fifteen years later, Petitioner appeared before his initial Ohio Parole Board Hearing on April 21, 1998. [Doc. 7-1]. At that hearing, the Parole Board reduced Petitioner's Offense Category from Category 13, Risk 2 to Category 12, Risk 2 and determined that Petitioner should serve an additional six years and seven months. [Doc. 14]. The Parole Board listed three reasons for their decision: (1) "The offense started and altercation (sic) in a bar between defendant and victim"; (2) "Defendant also has a good institution record"; and (3) "Defendant also has good program participation." [Doc. 1-3].

Petitioner also alleges that the Parole Board's decision was subsequently reviewed and confirmed by the Full Board. [Doc. 1-2]. "I had filed a computation in October 1998, where I was told by the parole board that my full time to serve was (270) months, and to (sic) keep up the good work." *Id.* Finally, Petitioner alleges that he met with Mr. Jim Bedra, a representative of the Parole Board, in early November 2004. Petitioner claims that Bedra told him that "in 1998 the victim's family protested against my release, but also said, I should not worry because they would fight for my release due to the fact that I had completed all that I was asked to do during my incarceration." *Id.*

-2-

Case No. 1:05-CV-2415
Gwin, J.

On November 30, 2004, the Parole Board reconvened the Hearing. [Doc. 14]. Recalling the mitigating factors established by the April 1998 hearing panel and noting that Petitioner had completed 270 months of incarceration on November 10, 2004, the Central Office Board Review Panel voted to release Petitioner on January 10, 2005. [Doc. 1-3]. The Central Office Board Review Panel found that "the offender is suitable for release at this time based upon the presence of mitigating factors, good institution adjustment and participation in relevant programming." *Id*.

On January 6, 2005, Gary Croft, Chair of the Ohio Parole Board, issued a "Stop Release" to the Grafton Correctional Institution with regard to Petitioner, stating "New information has been received which should be considered as it reflects on the above release decision." *Id*. After a Full Board Hearing convened by the Parole Board on April 11, 2005, the Parole Board reinstated the Petitioner's original Offense Category 13, Risk 2, and Petitioner's Hearing was continued until May 1, 2010. *Id*. The Parole Board explained, "Based on testimony presented, the full board determined that release at this time would demean the seriousness of the offense." *Id*. The April 2005 Parole Board Decision also noted that "Offender and Victim were at an after hours spot when a fight broke out over a woman. The offender stabbed the victim (sic) to death." *Id*. The Petitioner was represented by a public defender at the Full Board Hearing held on April 11, 2005. [Doc. 14].

On October 13, 2005, the Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Doc. 1-1]. With his petition, Petitioner alleges that the actions of the Parole Board violated his due process rights on January 6, 2005 and April 11, 2005 when it rescinded his January 10, 2005 parole date and continued his Hearing until May 1, 2010 in violation of his due process right to be free from arbitrary and unlawful government acts as protected by the Fourteenth Amendment. [Doc. 7-1]. Likewise, Petitioner claims that "He is seeking to have the State of Ohio

-3-

Case No. 1:05-CV-2415
Gwin, J.

follow its (sic) current procedures and not to make them up as they go along." *Id.* Finally, "Petitioner alleges that he 'has been placed in an incorrect category,' and '[t]he Board has failed to provide reasoning for its decision or to disclose the 'new information' presumably its decision is premised on.'" [Doc. 14].

On December 13, 2005, the Respondent filed a Motion to Dismiss Habeas Petition. [Doc. 6-1]. In response the Petitioner objected to the Respondent's Motion to Dismiss Habeas Petition. [Doc No. 7-1]. On July 13, 2006, Magistrate Judge Limbert issued his report and recommendation, recommending that Respondent's Motion to Dismiss the Habeas Petition be denied. [Doc. 14]. Magistrate Judge Limbert found that Petitioner's substantive due process claim was cognizable in federal habeas corpus. *Id.* Respondent timely objected to the interim report and recommendation on July 27, 2006. The Court now reviews Magistrate Judge Limbert's interim report and recommendation *de novo*. *See Flournoy v. Marshall*, 842 F.2d 875, 875-76 (6th Cir. 1988).

## II. Legal Standard

The AEDPA, 28 U.S.C. § 2254(a) governs a federal court's consideration of a petition for a writ of habeas corpus filed by a state prisoner in custody pursuant to the judgment of a state court. *See Turner v. Riley,* 2006 WL 1452693, *3 (S.D. Ala. 2006) (citing *Dill v. Holt,* 371 F.3d 1301, 1303 (11th Cir. 2004) (§ 2254 applied to § 2241 petition challenging parole revocation); *Thomas v. Crosby,* 371 F.3d 782, 787 (11th Cir. 2004) (§ 2254 applied to § 2241 petition challenging parole proceedings), *cert. denied,* 543 U.S. 1063 (2005); *Cook v. New York State Div. of Parole,* 321 F.3d 274 (2d Cir. 2003) (§ 2241 petition challenging parole revocation would be converted to § 2254 petition); *Crouch v. Norris,* 251 F.3d 720 (8th Cir. 2001) (§ 2254 applied to § 2241 petition

Case No. 1:05-CV-2415
Gwin, J.

challenging denial of parole); *Coady v. Vaugh,* 251 F.3d 480 (3d Cir. 2001) (§ 2241 petition challenging denial of parole treated as § 2254 petition); *accord Felker v. Turpin,* 518 U.S. 651 (1996) ( "Our authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'") (quoting 28 U.S.C. § 2254(a))).

Therefore, a state prisoner may challenge his imprisonment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged violations of state law are not cognizable in a federal habeas corpus action because a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *See Mayrides v. Chaudhry*, 43 Fed. Appx. 743, 746 (6th Cir. 2002) (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir. 1988)). *See also Hughes v. White*, 2003 U.S. Dist. LEXIS 13826, *1, *14 (E.D. Mich. 2003) ("Assuming for the sake of argument that the Board failed to follow procedures mandated by state law as petitioner alleges, such violations of state law would not entitle him to habeas corpus relief.").

In addition, 28 U.S.C. § 2254(d) requires that an application for a writ of habeas corpus by a state prisoner in custody pursuant to the judgment of a state court:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal &*

Case No. 1:05-CV-2415
Gwin, J.

*Correctional Complex*, 442 U.S. 1, 7 (1979). Likewise, the Supreme Court has held that "it would be wrong to find that understandings based on the setting of on or after dates can create any constitutionally protected liberty interest." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.,* 929 F.2d 233, 235 (6th Cir. 1991) (citing *Jago v. Van Curen*, 454 U.S. 14, 17-22 (1981)); *see also McAdoo v. Elo,* 365 F.3d 487, 498 (6th Cir. 2004) ("A defendant's mere expectation about the parole process is 'simply no ground for habeas relief.'") (citation omitted).

In addition, the Supreme Court has acknowledged that an inmate would suffer a "grievous loss" upon rescission of a given date of parole. *Jago*, 454 U.S. at 17; *see Inmates of Orient Corr. Inst*., 929 F.2d at 236 ("we can appreciate [plaintiffs'] disappointment that the hopes and expectations attendant upon the setting of on or after dates should have been frustrated"). However, the Supreme Court has "previously '[rejected] . . . the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause.'" *Jago*, 454 U.S. at 17 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).

Rather, "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely expected the liberty of actual release on parole from physical custody." *Hughes*, 2003 U.S. Dist. LEXIS 13826, at *12; *see also Greenholtz*, 442 U.S. at 9. Thus, "until a prisoner has actually been released, parole may still be rescinded without implicating constitutional rights." *Id*. at 9-10 (citing *Jago*, 454 U.S. at 14-18).

State prisoners may obtain a constitutionally protected interest in receiving parole if a state statute contains mandatory language that requires the parole board to grant parole in certain situations. *Greenholtz*, 442 U.S. at 12. However, the decision whether to grant parole to an Ohio prisoner lies wholly within the discretion of the Parole Board. R.C. § 2967.03; *see also Jago*, 454

Case No. 1:05-CV-2415
Gwin, J.

U.S. at 20. "[U]nder Ohio's system, . . . the decision-maker 'can *deny* the requested relief for any constitutionally permissible reason or for no reason at all.'" *Inmates of Orient Corr. Inst.*, 929 F.2d at 236 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). "Where the power of denial is this broad, 'the State has not created a constitutionally protected liberty interest.'" *Id.*; *see also Thomas v. Morgan,* 109 F. Supp. 2d 763, 768 (N.D. Ohio 2000) ("since Ohio has a purely discretionary parole system . . .petitioner may not challenge the procedures used to deny parole."). The fact that Ohio has not statutorily created a constitutionally protected liberty interest "remains true even after the [Parole Board] has approved the prisoner's release on parole on or after a specified date." *Inmates of Orient Corr. Inst.*, 929 F.2d at 235; *see Jago*, 454 U.S. at 20-21. "Therefore, the [Parole Board] possesses discretion to rescind an unexecuted order for a prisoner to receive parole at a future date" without violating any procedural due process afforded by the Fourteenth Amendment. *Hattie v. Anderson*, 68 Ohio St. 3d 232, 233 (Ohio 1994) (citing *Jago*, 454 U.S. at 14.).

Although the Ohio parole system fails to establish an inmate's constitutional right to release on parole, "The presence of a large measure of discretion in a parole system . . . does not alter the fundamental due process limitation against capricious decisionmaking. A legislative grant of discretion does not amount to a license for arbitrary behavior." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980); *see Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely."). Thus, with regard to substantive due process, "Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have

-7-

Case No. 1:05-CV-2415
Gwin, J.

a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block*, 631 F.2d at 236.

Likewise, "Substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, political beliefs or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest." *Conyers v. Palmer*, 2006 WL 1417845, *3 (W.D. Mich. 2006) (citing *Mayrides*, 43 Fed. Appx. at 746) (citing *Block*, 631 F.2d at 236.)). "In order to demonstrate the arbitrary conduct prohibited by substantive due process, Petitioner must show that the parole board's conduct shocks the conscience and constitutes an 'egregious abuse of governmental power.'" *Conyers*, 2006 WL 1417845, *3.

Finally, with regard to notification procedures for parole hearings, Ohio Revised Code § 2967.12(B) requires the Ohio Adult Parole Authority to notify a victim's representative of an inmate's pending release if the victim's representative has requested such notice pursuant to Ohio Revised Code § 2930.16. If the inmate being considered for parole was convicted pursuant to Ohio Revised Code § 2903.01, the notice shall inform the victim's representative and immediate family that they may request a full board hearing relating to the potential parole of the inmate and that they have the right to give testimony at such a hearing. OHIO REV. ANN. CODE § 2967.12(B). *See also* OHIO REV. ANN. CODE § 5149.101(B). If such a full board hearing is requested by the victim's representative or immediate family, Ohio law mandates that this request be granted. OHIO REV. ANN. CODE § 5149.101(A)(2). Finally, "If there is an objection at a full board hearing to a recommendation for the parole of a prisoner, the board may approve or disapprove the recommendation or defer its decision until a subsequent full board hearing." OHIO REV. ANN. CODE § 5149.101(C).

-8-

Case No. 1:05-CV-2415
Gwin, J.

### III. Analysis

As an initial matter, 28 U.S.C. § 2254(a) requires that Petitioner demonstrate he has been wrongfully imprisoned in "violation of the Constitution or laws or treaties of the United States" in order to present a cognizable claim in federal habeas corpus. As such, Petitioner's general claim "seeking to have the State of Ohio follow its (sic) current procedures and not make them up as they go along" does not justify consideration by this Court. Any claim that the Parole Board wilfully or mistakenly failed to follow its own operating procedures, as well as any other perceived errors of state law would be proper matters for resolution in state court. *See Mayrides*, 43 Fed. Appx. at 746; *Hughes*, 2003 U.S. Dist. LEXIS 13826, at *14.

Similarly, Petitioner fails to demonstrate a cognizable violation of procedural due process as guaranteed by the Fourteenth Amendment. It is well established that incarcerated individuals have no inherent constitutional right to parole regardless of whether a specific release date has been granted. *Greenholtz*, 442 U.S. at 7; *Inmates of Orient Corr. Inst.*, 929 F.2d at 235. Admittedly, the Supreme Court has repeatedly expressed its acknowledgment that rescission of a given parole date can devastate the hopes and expectations of individuals in custody. *Jago*, 454 U.S. at 17; *Inmates of Orient Corr. Inst.*, 929 F.2d at 236. However, until such time that a prisoner is actually released on parole, the inmate's expectation of liberty does not mature into a full-fledged liberty interest sufficient to trigger the procedural due process protections of the Fourteenth Amendment. *Jago*, 454 U.S. at 14-18.

Whereas the Supreme Court has recognized that states can establish constitutionally protected entitlements of liberty through mandatory statutory language requiring grants of parole under specific circumstances, the Supreme Court has also ruled that the Ohio parole system is

-9-

Case No. 1:05-CV-2415
Gwin, J.

entirely discretionary. *Id*. at 20. Therefore, although Petitioner received a "Stop Release" a mere four days prior to his scheduled date of parole, without a legitimate liberty interest his unfortunate circumstances fail to establish a procedural due process violation cognizable within federal habeas corpus.

Even without a liberty interest sufficient to justify procedural due process protections, Petitioner argues that he has suffered a cognizable violation of his substantive due process right to be free from arbitrary and capricious acts of government that threaten his liberty. Specifically, Petitioner alleges that the Parole Board's decision to rescind his release date and continue his parole hearing until May 1, 2010 represents an "arbitrary and lawless action of the State of Ohio" [Doc. 7-1], which "shocks the conscience and constitutes an 'egregious abuse of governmental power.'" *Conyers*, 2006 WL 1417845, *3.

In order to evaluate the viability of Petitioner's claim, it is necessary to recall the restrictions found within 28 U.S.C. § 2254(a), which govern all petitions for writs of habeas corpus filed by state prisoners incarcerated pursuant to the judgment of a state court. This statute prevents the issuance of a writ with respect to any claim that was adjudicated on the merits in State court unless the adjudication resulted in (1) a decision contrary to, or involving "the unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*"; or (2) an unreasonable determination of the facts in light of available evidence. 28 U.S.C. § 2254(a) (emphasis added).

Petitioner employs numerous appellate and district court decisions to buffet his claim that although no liberty interest exists which would warrant the procedural protections of the Fourteenth Amendment, individuals who have been granted a release date retain at least a "residuum of

-10-

Case No. 1:05-CV-2415
Gwin, J.

liberty" sufficient to necessitate substantive due process. *See Caswell v. Calderon*, 363 F.3d 832 (9th Cir. 2004); *Mayrides*, 43 Fed. Appx. 743; *Inmates of Orient Corr. Inst.,* 929 F.2d 233; *Thompson v. Amontrout*, 808 F.2d 28 (8th Cir. 1986); *Block*, 631 F.2d 233; *Conyers,* 2006 WL 1417845, *3. However, Petitioner fails to provide any citation illustrating that this proposition represents clearly established federal law as determined by the Supreme Court.

In actuality, Petitioner's claim stands in stark contrast to well-settled Supreme Court jurisprudence holding that (1) there is no constitutional right to parole; (2) in the absence of state legislation mandating parole in specific instances, inmates have no right to procedural due process; (3) a constitutionally significant change of status with regard to liberty occurs only upon actual release from custody; and (4) the Ohio parole system is purely discretionary. *See Jago*, 454 U.S. at 14-21; *Greenholtz*, 442 U.S. at 9-12. Puzzlingly, the very case cited by Petitioner as enshrining the vital "residuum of liberty" necessary to trigger the protections of substantive due process also explicitly notes that under Ohio's system of parole, the decisionmaker "can *deny* the requested relief for any constitutionally permissible reason or for no reason at all." *Inmates of Orient Corr. Inst.*, 929 F.2d at 235-36. As the terms "arbitrary" and "no reason at all" are virtually synonymous, this Court finds Petitioner's precedential evidence provides little guidance, let alone establishes that Ohio contravened clearly established federal law as determined by the Supreme Court.

Even if the Court were to assume that Petitioner could overcome the significant hurdle presented by 28 U.S.C. §2254(a), Petitioner's claim would fail on its merits. In order to establish a substantive due process violation, "Petitioner must show that the parole board's conduct shocks the conscience and constitutes an 'egregious abuse of governmental power.'" *Conyers*, 2006 WL 1417845, *3. As evidence of this fact, Petitioner claims that the Parole Board "failed to provide

-11-

Case No. 1:05-CV-2415
Gwin, J.

reasoning for its decision or to disclose the 'new information' presumably its decision is premised on.'" [Doc. 14].

However, the Parole Board listed the following explanation for its decision, "Based on testimony presented [by the victim's family members], the full board determined that release at this time would demean the seriousness of the offense." [Doc. 1-3]. While victim impact testimony may not address whether the crime originated in a bar, this mitigating factor was only one of three reasons provided by the Parole Board on April 21, 1998 for reducing Petitioner's Offense Category. [Doc. 1-3].

In addition, the Parole Board did not simply exercise their significant discretion when deciding to admit and consider the testimony of the victim's relatives. Instead, the Parole Board was *required* by Ohio law to convene a full board hearing and permit the victim's representative and immediate family an opportunity to testify. OHIO REV. ANN. CODE § 5149.101(A)(2). It is certainly within the considerable discretion of the Parole Board to weigh this testimony against previously identified mitigating factors, such as Petitioner's "good institution record" and "good program participation." [Doc. 1-3]. To deem such consideration arbitrary, a shock to the conscience or an egregious abuse of government power would render sections 2967.12(B), 5149.101(A)(2), 5149.101(B), and 5149.101(C)) of the Ohio Revised Code nothing more than mere statutory tokens of sympathy for victims' families rather than a means to meaningfully participate in the criminal justice system.

The circumstances surrounding the rescission of Petitioner's release date are certainly regrettable. However, Petitioner has failed to present a claim for relief that is cognizable in federal habeas corpus.

Case No. 1:05-CV-2415
Gwin, J.

## IV.  Conclusion

For the reasons described above, the Court finds that Petitioner has not presented a cognizable claim for relief under 28 U.S.C. § 2254.  Accordingly, the Court **DECLINES TO ADOPT** Magistrate Judge Limbert's Report and Recommendation and **GRANTS** Respondent's Motion to Dismiss Habeas Petition.  The Court additionally certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith.  *See* 28 U.S.C. §2253(c).

IT IS SO ORDERED.


Dated: September 29, 2006                         s/          *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE